UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Cathy Thompson, | ) |
| Plaintiff, | ) |
| v. | ) No. 06 C 1235 |
| American Airlines, Inc., | ) Judge Joan H. Lefkow |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Cathy Thompson ("Thompson") brought suit against her former employer, defendant American Airlines, Inc. ("American"), claiming that she was discharged from employment in retaliation for having made reports about her work environment to the Occupational Safety and Health Administration ("OSHA") and for having pursued her rights under the Illinois Workers' Compensation Act. Presently before the court are (1) American's motion for summary judgment and (2) American's motion to strike the affidavit of Matthew Jones, which Thompson filed along with her response to American's motion for summary judgment. For the following reasons, American's motion to strike the affidavit of Matthew Jones [#62] is granted, and defendant's motion for summary judgment [#47] is granted.

### JURISDICTION

On January 26, 2006, Thompson filed a complaint in the Circuit Court of Cook County, Illinois, naming as defendants American Airlines, Inc., American Eagle Airlines, Inc., and AMR

Corporation.[1] On March 7, 2006, the defendants filed a notice of removal with this court, alleging diversity of citizenship under 28 U.S.C. § 1332(a). Whereas the plaintiff is a citizen of Illinois, each of the originally-named defendants is a Delaware Corporation with its principal place of business in Fort Worth, Texas, and the amount in controversy exceeds $75,000. The court thus has jurisdiction to hear this case based on diversity jurisdiction. 28 U.S.C. § 1332(a).

## STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in the pleadings, depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact is one which might affect the outcome of the suit. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable

---

[1] On April 20, 2006, the court granted plaintiff's motion to voluntarily dismiss defendants American Eagle Airlines, Inc. and AMR Corporation.

inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In the context of employment discrimination, "summary judgment is warranted where the evidence, interpreted favorably to the plaintiff, could not persuade a reasonable jury that the employer had discriminated against the plaintiff." *Jones* v. *Union Pacific R.R. Co.*, 302 F.3d 735, 739–40 (7th Cir. 2002) (internal quotation marks and alterations omitted).

## BACKGROUND[2]

Thompson worked for American Eagle Airlines, Inc. from 1991 until she was transferred to American in 1996. From 1996 until her termination on December 23, 2004, Thompson worked for American, performing her duties at O'Hare International Airport. While with American, Thompson was first employed as a city ticket office agent, a position she held until 1998, at which time she became an airport agent, a position she held until her termination. From about 1999 until her termination, Thompson reported to Gary Baker ("Baker"), a customer service supervisor. As an airport agent, Thompson was responsible for various functions involving security, ticketing, check-in, and customer service. Her ticketing responsibilities included booking reservations, collecting fares, making changes due to weather or at the passenger's request, and rebooking or rescheduling passengers due to flight cancellations and overbookings.

While at work on December 19, 2002, Thompson struck her face against a shelf at the O'Hare ticket counter and broke her nose. Plaintiff contends that her employer should have

---

[2] Unless otherwise specified, the facts recited consist only of those which the plaintiff has admitted.

3

known that the shelf, hinged and unsecured, presented unsafe work conditions. The next day, December 20, Thompson filed a report with OSHA about the unsafe work conditions. Shortly thereafter, OSHA sent American a letter notifying the company that OSHA had received a report of safety hazards. The letter stated that OSHA did not intend to investigate the safety hazards and instead instructed American to handle the investigation and make any necessary corrections or modifications to the work site. The letter did not identify Thompson as the individual who made the complaint. In January 2003, Thompson filed a workers' compensation claim with the Illinois Industrial Commission for her December 19, 2002 injury. Thompson received a settlement for her claim.

About two years later, on December 22, 2004, Lynn Mazzuchelli ("Mazzuchelli"), a customer service manager, advised Thompson that she was being withheld from employment and investigated for ticketing work she performed on certain dates in March through July of 2004. Also on December 22, Mazzuchelli questioned Thompson regarding six different sets of ticketing transactions.

In the first series of transactions, Thompson had refunded money to fifteen police officers, one of whom was Thompson's brother. Thompson's brother had initially given her a list of names and asked her to book airline tickets for group travel between July 23 and July 25, 2004. On March 15, 2004, Thompson booked the original trip at a rate of $178.20 per ticket. On June 26, 2004, Thompson "redid"[3] the tickets for the same travel dates but at a reduced rate

---

[3] While American alleges that she *reissued* the tickets, Thompson argues: "Thompson did not reissue tickets, she checked the fare, and *redid* the tickets at the lower rate by crediting the original form of payment." Pl.'s Resp. to Def.'s R. 56.1 Statement of Facts, at ¶ 34 (emphasis added). In any case, the court is unmoved by the distinction Thompson appears to draw between the terms "reissued" and "redid."

4

of $98.20 per ticket, using a Fourth of July holiday fare discount code. American alleges that the Fourth of July holiday fare did not apply to the group's dates of travel, and that, in any case, it was improper to refund the money back to the individual's credit cards rather than issuing transportation vouchers. Thompson has admitted that the lower fare did not apply but maintains that she was not aware of that fact until December 22, 2004. Thompson further argues that she acted within American's guidelines when she credited the original form of payment rather than issuing transportation vouchers.

In the second series of transactions, on July 2, 2004,[4] Thompson booked tickets for members of "the Downes family" for travel between July 4 and July 7, 2004. Later, on October 20, 2004, Thompson reissued these tickets for travel dates in November, but used the same discount fare, which did not apply to travel dates in November. Thompson has admitted that she made an error in rebooking these tickets but denies that it cost American any revenue. Although Thompson's maiden name is Downes, she maintains that she is not related to any of the individuals for whom she booked tickets in this series of transactions.

In the third series of transactions, American alleges that on July 2, 2004, Thompson booked tickets for members of the Downes family for travel between July 4 and July 7, 2004, correctly using the holiday fare. According to American, on September 14, 2004, Thompson changed the dates of travel for two of the tickets to October and November, dates for which the holiday fare no longer applied, but failed to collect either the fare difference or the applicable fee

---

[4] Although Paragraph 37 of American's Local Rule 56.1 statement of material facts lists this date as July 2, 2005, not July 2, 2004, this appears to have been the result of a typographic error. A number of other events that occurred on dates in 2004 also appear to have been erroneously specified by the parties in various filings as having occurred in 2005 (by which time, the parties agree, Thompson was no longer employed by American).

for the ticketing change. Thompson admitted in her deposition that she erroneously applied the discount fare to the reissued tickets but maintains that she acted within her discretion when she waived the ticketing change fee.

In the fourth series of transactions, American alleges that Thompson changed the travel dates for two individuals but did not reprice the tickets and did not collect the fare difference.

The fifth series of transactions involved travel that had initially been booked for two individuals on June 27, 2004, using a discounted fare. According to American, Thompson reissued these tickets twice, first on September 30, 2004, and again on October 12, 2004, without collecting any applicable charges for the changes. Thompson claims that she made the changes because of Hurricane Charlie, and that the company maintains storm policies that instruct ticket agents on what to do in circumstances involving adverse weather. American alleges, however, that the hurricane rules upon which Thompson purported to rely did not apply to the customers' travel dates.

The sixth series of transactions involves tickets that Thompson booked for herself and six friends for travel between January 26 and January 30, 2005, using the same Fourth of July holiday discount fare.[5] Thompson has admitted that the holiday discount fare did not apply to travel on those dates.

---

[5] Thompson argues that the discount fare, which was applied in nearly all of the transactions at issue in this case, is properly characterized not as "a 'Fourth of July' fare," but as "a fare that came out around the 4th of July." Pl.'s Resp. to Def.'s R. 56.1 Statement of Facts, at ¶ 48. Nevertheless, because Thompson herself has referred to it as "the holiday fare" (stating in her deposition, for example, "I used the holiday fare for myself as well"), the court will refer to it as the Fourth of July holiday discount fare. Pl.'s Dep. (Ex. F to Pl.'s Resp. to Def.'s R. 56.1 Statement of Facts), at 130–31.

On December 23, 2004, Mazzuchelli gave Thompson a letter from American advising her that her employment with American was terminated, effective that day, for violating Rules 16 and 34 of American Airlines Rules and Regulations which, respectively, prohibit conduct detrimental to the company and dishonesty. Four days later, on December 27, 2004, Thompson submitted a written grievance to the company, protesting her termination. Bernard DeSena ("DeSena") was the executive in charge of her work location and the individual at American who reviewed her grievance regarding the termination decision. After meeting with Thompson and reviewing various documents, DeSena denied her grievance.

## DISCUSSION

### I. American's Motion to Strike the Affidavit of Matthew Jones

As a preliminary matter, the court will address American's motion to strike the affidavit of Matthew Jones ("Jones"), which Thompson filed along with her response to American's motion for summary judgment. Jones worked for American from 1989 to 2005 and, like Thompson, was a ticket agent at O'Hare Airport. American argues that the affidavit contains allegations that are so generic and lacking in factual support or foundation that they would never be admissible in trial and should not be relied on to defeat a motion for summary judgment. For example, American argues that Paragraphs 13, 14, and 15 of Jones's affidavit should be stricken because they are not based on personal knowledge.

In response to American's motion to strike, Thompson states that all of the 22 paragraphs of the affidavit are "based on [Jones's] sixteen years of service" at American but otherwise fails to address the arguments made by American regarding the alleged foundational deficiencies of the affidavit. Instead, Thompson uses the response as an opportunity to argue that Jones is "an

7

important, relevant witness"; that during discovery, American refused to allow the deposition of Jones; and that "Defendant must not be allowed to again bury [Jones's] testimony." Pl.'s Resp. to Def.'s Mot. to Strike, at 2–3. Thompson thus contends that either the motion to strike should be denied or "the Court should permit the Plaintiff to supplement the Affidavit of Matthew Jones either by allowing his deposition to take place, or by allowing Plaintiff to supplement the affidavit of Matthew Jones with a further affidavit." *Id.* at 5. Thompson's contention that she should have been permitted to depose Jones, however, does not pertain to foundational deficiencies in the affidavit. Furthermore, as Thompson acknowledges in her response, Magistrate Judge Valdez entered an order on March 9, 2007, denying Thompson's motion to compel the deposition of Jones.[6] Thompson's response to American's motion to strike Jones's affidavit is simply not an appropriate vehicle for relitigating or otherwise challenging the court's previous denial of her motion to compel.

Rule 56(e) of the Federal Rules of Civil Procedure requires that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). As the Seventh Circuit has reiterated, "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Drake* v. *Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (quoting *Hadley* v. *County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983), *cert. denied*, 465 U.S. 1006, 104 S. Ct.

---

[6] In denying Thompson's motion, Judge Valdez cited both the untimeliness of Thompson's motion to compel and the untimeliness of her request for depositions.

1000, 79 L. Ed. 2d 232 (1984)). It is within the discretion of the district court to strike portions of an affidavit that fail to meet the requirements of Rule 56(e). *See, e.g.*, *Drake*, 134 F.3d at 887 (noting that the district court "was correct to strike [] portions of the affidavits" that failed to comply with Rule 56(e)); *Ladenberger* v. *Gen. Signal Pump Grp.*, No. 00 C 4054, 2001 WL 586497 (N.D. Ill. May 31, 2001) (striking affidavit because it failed to provide the basis for the affiant's knowledge).

The court will address American's arguments regarding each of the paragraphs of the affidavit in turn. In Paragraphs 13, 14, and 15, respectively, Jones purports to have knowledge that Paul Cody was aware that (a) Thompson sustained a broken nose while working at the American ticket counter; (b) Thompson reported hazardous conditions to OSHA; and (c) Thompson resolved her workers' compensation claim. Jones's Aff. (Ex. A to Def.'s Mot. to Strike), at ¶¶ 13–15. The affidavit presents no basis for Jones's purported knowledge of Paul Cody's knowledge. American's motion to strike Paragraphs 13, 14, and 15 is therefore granted.

Paragraph 16 alleges that Jones sent an email on February 1, 2002 to an American manager, advising him that due to American ticket agents' creating "dummy reservations" on that day, the airline had lost revenue in the amount of $132,103.00. *Id.* at ¶ 16. Paragraph 16 further alleges that the manager "took no action to investigate these fraudulent ticketing transactions, nor did any American Airlines employee get disciplined for these actions, in spite of [the] loss of revenue." *Id.* Jones provides no foundation or explanation for his conclusion that these ticketing transactions were fraudulent. Moreover, Jones presents no basis for his knowledge as to what American did in response to his email. American's motion to strike Paragraph 16 is therefore granted.

9

Paragraphs 17 and 18 allege that Mazzuchelli was aware, prior to her investigation of Thompson, that Thompson had filed an OSHA report and a workers' compensation claim against American, and that these facts were "common knowledge at American['s] O'Hare facility." *Id.* at ¶¶ 17–18. Similarly, Paragraphs 20, 21, and 22 allege that DeSena was aware that Thompson had been injured at work, made a report to OSHA, and filed a workers' compensation claim. *Id.* at 20–22. The only apparent basis that Jones provides for his knowledge of Mazzuchelli and DeSena's knowledge, however, is Jones's equally unsupported assertion that these facts were "common knowledge at American." *Id.* at ¶¶ 17–18. American's motion to strike Paragraphs 17, 18, 20, 21, and 22 is therefore granted.

Paragraph 19 of the affidavit, which alleges that "Thompson was fired on December 23, 2004 because she had made a complaint with OSHA regarding unsafe conditions at the airport, got injured and subsequently filed a Workers' Compensation claim," is essentially a legal conclusion, not an assertion of fact. Furthermore, even if the court were to accept the facts alleged in all of other paragraphs of this affidavit, despite their numerous foundational shortcomings, Jones provides no apparent basis for this conclusion. American's motion to strike Paragraph 19 is therefore granted.

American also moves to strike Paragraphs 3 through 12 of the affidavit, in which Jones testifies that American's ticket agents were encouraged to think and act independently, particularly with respect to ticketing transactions, and that to the best of his knowledge, neither he nor Thompson ever broke any of American's ticketing rules or policies or personally profited from any transaction that either employee, respectively, completed. American argues that "Jones is a former coworker of Thompson, and his perceptions of her performance have absolutely no

relevance to this case." Def.'s Mot. to Strike, at ¶ 13. Unlike in Paragraphs 13 through 22, however, Jones does have an apparent basis for personal knowledge of most of the facts that he attests to in Paragraphs 3 through 12. American's motion to strike Paragraphs 3 through 12 is therefore denied.

American did not make specific arguments with respect to Paragraphs 1 and 2 of the affidavit, and these paragraphs appear to be based on Jones's personal knowledge. American's motion to strike is therefore denied with respect to Paragraphs 1 and 2.

## II. American's Motion for Summary Judgment

To present a valid claim for retaliatory discharge under Illinois law, a plaintiff must show "that she was (1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy." *Zimmerman* v. *Buchheit of Sparta, Inc.*, 645 N.E.2d 877, 880, 164 Ill. 2d 29,(1994). In the context of workers' compensation, "a plaintiff must show (1) that he was the defendant's employee before his injury; (2) that he exercised a right granted by the Workers' Compensation Act; (3) and that he was discharged from his employment with a causal connection to his filing a workers' compensation claim." *Carter* v. *Tennant Co.*, 383 F.3d 673, 677 (7th Cir. 2004). "The element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *McCoy* v. *Maytag Corp.*, 495 F.3d 515, 521 (7th Cir. 2007) (quoting *Hartlein* v. *Ill. Power Co.*, 601 N.E. 2d 720, 728, 151 Ill. 2d 142, (1992)) (internal quotation marks omitted).

The Seventh Circuit has not yet settled the issue of whether a federal court exercising diversity jurisdiction should apply the Illinois state law framework to hear a retaliatory discharge claim or "use the familiar burden-shifting method first presented in *McDonnell Douglas*."

11

*McCoy*, 495 F.3d at 521 (citing *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). Under either the state law framework or the *McDonnell Douglas* burden-shifting method, however, a plaintiff's claim will fail where the defendant provides a "valid, non-pretextual reason for its decision to terminate the plaintiff." *Id.* at 522 (citing *Carter* v. *Tennant Co.*, 383 F.3d 673, 678 (7th Cir. 2004)). In other words, where the defendant has provided a legitimate, nonretaliatory reason for its treatment of the plaintiff, the plaintiff must demonstrate that the defendant's proffered reason is merely a pretext for unlawful retaliation. *See Scaife* v. *Cook County*, 446 F.3d 735, 739–40 (7th Cir. 2006); *Gomez* v. *The Finishing Co.*, 861 N.E.2d 189, 197–98, 369 Ill. App. 3d 711, 308 Ill. Dec. 124 (2006).

In order to show pretext, "a plaintiff must offer evidence to indicate that the employer did not honestly believe the reasons it gave for its action and is simply lying to 'cover [its] tracks.'" *McCoy*, 495 F.3d at 522–23 (quoting *Cardoso* v. *Robert Bosch Corp.*, 427 F.3d 429, 435 (7th Cir. 2005)); *see also Sweeney* v. *West*, 149 F.3d 550, 557 (7th Cir. 1998) ("Establishing pretext requires more than excusing the employer's stated reason for its decision; the plaintiff must call the employer's honesty into question by rebutting the reason given."). Pretext thus "means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Tincher* v. *Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir.1997) (internal quotation marks omitted).

For purposes of this motion, American does not dispute that Thompson engaged in protected activity (when she filed a workers' compensation claim and, likewise, when she made a report to OSHA) or that she was terminated by American. The only issue in dispute, therefore,

12

is whether Thompson can establish a causal connection between her protected activity and her termination.

American has presented substantial evidence that Thompson was fired because of ticketing improprieties. Plaintiff has admitted, for example, that the Fourth of July holiday discount fare did not apply to the travel dates for the tickets she booked (or rebooked) (1) for her brother and the other fifteen police officers; (2) for the members of the "Downes family"; and (3) for herself and her six friends. Plaintiff claims, however, that until she was approached by Mazzuchelli in December 22, 2004, she was not aware of the fact that the discount fare did not apply to travel on those dates. In any case, it is clear from the record that American routinely terminated employees for ticketing improprieties similar to those in which Thompson allegedly engaged. Indeed, Thompson herself cites a number of such examples, including Matthew Jones,[7] and argues in her response that at least "three other co-workers were terminated by [American] for similar alleged ticketing transactions." Pl.'s Resp. to Def.'s Mot. for Summary Judgment, at 8. Thompson emphasizes that, unlike her, the other individuals she cites who were fired for similar offenses, such as Jones, were ultimately reinstated. Nevertheless, American has presented a legitimate, nonretaliatory basis for firing Thompson.

Under either the state law framework or the *McDonnell Douglas* burden-shifting method, the causal element of Thompson's claim is not met if she cannot prove by a preponderance of the evidence that American's stated reasons for her termination were pretextual. *See McCoy*,

---

[7] Jones, whose affidavit was the subject of the motion to strike discussed above, was a ticket agent terminated by American after he was accused by Mazzuchelli of improperly reissuing expired tickets to a travel agency at which a friend worked and then traveling with his friend on the reissued tickets.

495 F.3d at 522.  Thompson argues that American's stated reasons for firing Thompson were a pretext for retaliation because (1) members of American's management, including Mazzuchelli and DeSena, were aware that Thompson had filed a report with OSHA and a workers' compensation claim; and (2) Thompson "was the only employee accused of ticketing transactions discrepancies by Lynn Mazzuchelli . . . [who] did not get her job back," and "<u>NOT</u> coincidently, she was the only employee that filed a Worker's Compensation claim and an OSHA claim," Pl.'s Resp. to Def.'s Mot. for Summary Judgment, at 1 (emphasis in original). Whether considered independently or taken together, however, Thompson's arguments fail to establish pretext.

With respect to the first argument, Thompson has failed to show that the individual (or individuals) who made the decision to fire her knew of either her OSHA report or her workers' compensation claim.  As evidence that Mazzuchelli knew of the OSHA report and workers' compensation claim, Thompson relies on (a) Jones' testimony in his affidavit that Mazzuchelli knew of her OSHA report and her workers' compensation claim, and that these facts were "common knowledge at American['s] O'Hare facility," Jones's Aff. (Ex. A to Def.'s Mot. to Strike), at ¶¶ 17–18; and (b) her own testimony in her deposition that "[t]he letter [regarding workplace safety] was posted in our break room and everyone knew that I had broke[n] my nose and that the complaint came from me."  Pl.'s Dep. (Ex. F. to Pl.'s Resp. to Def.'s Mot. for Summary Judgment), at 42.  As discussed above, the cited portions of Jones's affidavit have been stricken due to their foundational deficiencies and cannot be considered by the court with respect to American's motion for summary judgment.

While Thompson's deposition testimony is properly before the court, there is no indication in the record that Mazzuchelli even used the break room in question or, even assuming that she was present in the break room during the time period when the letter was posted, that she would have been likely to read it. Thompson has thus failed to provide evidence from which a finder of fact could reasonably infer that Mazzuchelli was aware of either the OSHA report or the workers' compensation claim. Furthermore, even if the cited portion of Thompson's deposition testimony did reasonably permit the inference that Mazzuchelli was aware of the OSHA report, Thompson has admitted that she had no such knowledge of Mazzuchelli's awareness. Indeed, Thompson testified later in her deposition that "to my knowledge," neither Mazzuchelli nor DeSena was aware of either the OSHA report or the workers' compensation claim. Pl.'s Dep. (Ex. F. to Pl.'s Resp. to Def.'s Mot. for Summary Judgment), at 180. These admissions further preclude the attenuated inference that Thompson urges the court to draw from her testimony about the letter posted in the break room.

Paradoxically, after arguing strenuously in her response that Mazzuchelli had such knowledge, Thompson "point[s] out that contrary to Defendant's contention . . . Mazzuchelli did <u>not</u> make the decision to terminate Cathy Thompson's employment." Pl.'s Resp. to Def.'s Mot. for Summary Judgment, at 12 (emphasis in original). Rather, Thompson argues, Mazzuchelli was "merely the pawn of American Airlines management to carry out the termination of Ms. Thompson." *Id.* at 13. If that is the case, however, Thompson must show the individuals who made the decision to terminate Thompson were aware of her OSHA report or her workers' compensation claim. Thompson fails to meet that burden as well, as she neglects even to specify

15

which individuals in American's management allegedly made the termination decision, much less present evidence that those individuals were aware of her protected activity.

Thompson's second argument—that she was the only employee accused of ticketing improprieties by Mazzuchelli who did not get her job back and, not coincidently, was the only employee that filed an OSHA report and a worker's compensation claim—also fails to establish pretext. On its face, Thompson's argument does not even suggest that her termination was pretextual. While it might be read to suggest that American's decision not to rehire Thompson was retaliatory, it does not directly challenge American's proffered reasons for her termination—the employment decision at the heart of this case.[8] Perhaps Thompson could be understood to be arguing (albeit indirectly) that over a period of many years, American terminated a number of employees, including Thompson, for similar ticketing improprieties and rehired every one of them except for Thompson, all as part of an effort to create a pretext for

---

[8] Thompson has brought a claim for retaliatory discharge, not failure to rehire, and thus must demonstrate pretext regarding her employer's decision to terminate her, not its decision to not rehire her. *Cf. Sauzek* v. *Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir. 2000) (suggesting that "an employer's decision to terminate a worker is a separate and distinct act from a subsequent decision not to rehire that employee"); *Burnam* v. *Amoco Container Co.*, 755 F.2d 893, 894 (11th Cir.1985) (holding that "a failure to rehire subsequent to an allegedly discriminatory firing, absent a new and discrete act of discrimination in the refusal to rehire itself, cannot resurrect the old discriminatory act"). It is worth noting, however, that Thompson has also failed to present evidence of pretext with respect to American's proffered reasons for not rehiring her. After her termination, Thompson filed a grievance protesting her termination, which American denied. Thompson has not presented evidence that DeSena, the executive in charge of her work location who reviewed her grievance, was aware of either the OSHA report or the workers' compensation claim. Moreover, Thompson testified in her deposition—just as she did with respect to Mazzuchelli—that "to my knowledge," DeSena was not aware of either the OSHA report or the workers' compensation claim. Pl.'s Dep. (Ex. F. to Pl.'s Resp. to Def.'s Mot. for Summary Judgment), at 180.

terminating Thompson. In any case, Thompson has failed to present evidence of such an improbable scheme.

Thompson has thus failed to present evidence sufficient to demonstrate that American's proffered non-retaliatory reasons for her termination were pretextual. Summary judgment in favor of American is therefore required.

**ORDER**

For the reasons stated above, defendant's motion to strike the affidavit of Matthew Jones [#62] is granted with respect to Paragraphs 13 through 22 of the affidavit and denied with respect to Paragraphs 1 through 12. Paragraphs 13 through 22 of Jones's affidavit are stricken. Defendant's motion for summary judgment [#47] is granted. This case is terminated.

Dated: December 5, 2007          Enter: _____

                                        JOAN HUMPHREY LEFKOW
                                        United States District Judge